UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LINDA DESMOND,

                    **Plaintiff,**

           v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                   **Defendant.**
_____

**DECISION AND
ORDER**

11-CV-0818
(VEB)

## I. INTRODUCTION

In March of 2008, Plaintiff Linda Desmond applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since October of 2006 due to physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Olinsky Law Group, Howard D. Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties, by and through their respective counsel, consented to the jurisdiction of a United States Magistrate Judge on November 29, 2012. (Docket No. 19).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On March 21, 2008, Plaintiff applied for SSI benefits and DIB, alleging that she had been unable to work since October 1, 2006. (T at 74, 199, 205, 231).[1]  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Syracuse, New York, on April 19, 2010, before ALJ Susan Wakshul.[2]  (T at 63). Plaintiff appeared with her attorney and testified. (T at 69-94). Testimony was also received via teleconference from Melissa Fass Carlin, a vocational expert. (T at 95-106).

On June 24, 2010, ALJ Wakshul issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period and denying Plaintiff's claims for benefits.  (T at 20-31).  The ALJ's decision became the Commissioner's final decision on May 24, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, by and through her attorneys, timely commenced this action by filing a Complaint on July 15, 2011. (Docket No. 1).   The Commissioner interposed an Answer on January 20, 2012.  (Docket No. 7).  Plaintiff filed a supporting Brief on April 18, 2012. (Docket No. 13).  The Commissioner filed a Brief in opposition on July 5, 2012. (Docket No. 17). As noted above, the parties, through their respective attorneys of record, consented to the jurisdiction of a United States Magistrate Judge on November 29, 2012. (Docket No.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

[2]The ALJ presided via videoconference from Baltimore, Maryland. (T at 20).

19).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons set forth below, the Commissioner's decision is supported by substantial evidence and, as such, the Commissioner's motion is granted and Plaintiff's motion is denied.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir.1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as

_____

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010, and had not engaged in substantial gainful activity since October 1, 2006, the alleged onset date. (T at 22).

The ALJ found that Plaintiff had the following impairments considered "severe" under the applicable Social Security Regulations (the "Regulations"): chronic left shoulder sprain,

---

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

back strain, depression, and anxiety. (T at 22-23). However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 23-25).

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567 (b) and 416.967 (b). (T at 25-29). The ALJ found that Plaintiff could not perform her past relevant work as a crossing guard, nurse assistant, cleaner, or cashier, as those jobs required the performance of work-related duties precluded by Plaintiff's residual functional capacity. (T at 29).

Considering Plaintiff's age (45 years old on the alleged onset date), education (limited), work experience, and RFC, and considering the testimony provided by the vocational expert, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 30). Accordingly, the ALJ determined that Plaintiff had not been under a "disability," as that term is defined under the Act, from the alleged onset date (October 1, 2006) through the date of the ALJ's decision (June 24, 2010), and was therefore not entitled to benefits. (T at 19). As noted above, the ALJ's decision became the Commissioner's final decision on May 24, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

## 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. She offers four (4) principal arguments. First, Plaintiff argues that the ALJ should have found her sleep disorder to be a severe impairment. Second, Plaintiff contends that the ALJ's residual functional capacity determination is not supported by substantial evidence. Third,

Plaintiff challenges the ALJ's credibility determination. Fourth, Plaintiff argues that the ALJ presented defective hypothetical questions to the vocational expert. This Court will address each argument in turn.

### a. Severity of Sleep Disorder

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." <u>Gibbs v. Astrue</u>, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. <u>Miller v. Comm'r of Social Sec.</u>, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); <u>see</u> <u>also</u> 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." <u>Coleman v. Shalala</u>, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March

19,1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

In the present case, the ALJ found that Plaintiff had the following severe impairments: chronic left shoulder sprain, back strain, depression, and anxiety. (T at 22-23). Plaintiff contends that she had a severe sleep impairment and that the ALJ erred by failing to make such a finding. In support of this argument, Plaintiff points to treatment notes documenting her complaints of restless sleep. (T at 305, 506, 508-09, 589, 90). In addition, Dr. Ganesh, a consultative examiner, diagnosed a sleep problem. (T at 506). Ms. Suzanne DeJoy, a treating social worker, also indicated that Plaintiff suffered from sleep disturbance. (T at 545).

This Court finds Plaintiff's argument unpersuasive. First, although the record indicates that Plaintiff suffered from sleep disturbance, it is generally cited as a symptom or condition related to her depression and anxiety (and/or as a side effect of medication prescribed for those conditions), as opposed to a separate impairment. For example, Dr. Howard Amann, a treating physician, diagnosed "Anxiety, depression with sleep disturbance." (T at 589). Ms. DeJoy, the treating social worker, identified "sleep disturbance" as one of the "signs and symptoms" of Plaintiff's psychiatric impairments. (T at 544). Plaintiff does not point to any evidence of work-related limitation related solely to the issue of sleep disturbance or assessing the limitation imposed by that condition separate and apart from her other mental impairments.

Second, the ALJ found Plaintiff's anxiety and depression to be severe impairments and discussed Plaintiff's complaints of sleep disturbance. (T at 23, 26, 29). Plaintiff has not shown how the ALJ's overall analysis would have been affected by considering her sleep disturbance as a separate, severe impairment. Plaintiff testified that her sleep had been

improved by prescription medication. (e.g. Depakote). (T at 77, 84). A treatment note from Dr. Amann indicated that Plaintiff "responded well" to Depakote. (T at 589).

Third, because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act (including mental impairments – depression and anxiety disorder) and continued with the sequential analysis, any arguable errors in his findings at step two of the analysis were harmless. <u>See</u> <u>Maziarz v. Secretary of Health & Human Services</u>, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); <u>McCartney v. Commissioner of Social Sec.</u>, Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); <u>Portorreal v. Astrue</u>, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

Accordingly, this Court finds no reversible error with regard to this aspect of the ALJ's decision.

### b.    RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." <u>Melville v. Apfel</u>, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." <u>Id.</u>

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. <u>LaPorta v. Bowen</u>, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ determined that Plaintiff retained the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567 (b) and 416.967 (b). (T at 16-19). Plaintiff challenges the ALJ's RFC determination on two principal grounds. First, she contends that the ALJ failed to provide a function-by-function assessment. Second, Plaintiff argues that the ALJ did not properly assess the opinions provided by her treating providers.

### i.    Failure to Provide Function-by-Function Assessment

An ALJ's RFC assessment must include a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's

work-related abilities on a function-by-function basis. With regard to physical limitations, this means the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y.1999). Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, *e.g.,* sedentary, light, medium, heavy, and very heavy. Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).

The ALJ in this case did not provide a function-by-function analysis with regard to Plaintiff's physical RFC. Rather, she simply expressed the RFC in terms of an exertional level of work (*i.e.* light work).[5] (T at 25). The Second Circuit has not yet decided whether non-compliance with SSR 96-8p is *per se* grounds for a remand.

At least three circuit courts of appeal have concluded that a function-by-function analysis is desirable, but not an absolute requirement if the rationale for the ALJ's RFC assessment can be readily discerned. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir.2003) (an ALJ does not fail in his or her duty to assess a claimant's RFC on a function-by-function basis merely because the ALJ does not address all areas regardless of whether a limitation is found); Delgado v. Comm'r of Soc.

---

[5]The ALJ provided more detailed concerning Plaintiff's ability to perform the mental demands of work, concluding that she was limited to simple, routine, repetitive tasks, with occasional changes to the work setting, decision-making, and use of judgment, and with only occasional contact with supervisors, coworkers and the general public. (T at 25).

Sec., 30 F. App'x 542, 547 (6th Cir.2002).[6]

District courts in the Second Circuit have reached conflicting conclusions. See, e.g., Wood v. Comm'r of Soc. Sec., No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009)(collecting cases); McMullen v. Astrue, 05-CV-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008); Brown v. Barnhart, No. 01-CV-2962, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr.15, 2002)("In sum, because the ALJ did not properly apply the legal standard in Social Security Ruling 96-8p for assessing residual functional capacity, I cannot properly conclude that his finding that the claimant retained the residual functional capacity to do her past work was supported by substantial evidence."); Matejka v. Barnhart, 386 F.Supp.2d 198, 208 (W.D.N.Y.2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk ... Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence."); but see Casino-Ortiz v. Astrue, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007)(sustaining ALJ's decision, notwithstanding failure to provide function-by-function analysis); Novak v. Astrue, No. 07 Civ 8435, 2008 WL 2882638, at *3 & n. 47 (S.D.N.Y. July 25, 2008)("The A.L.J. must avoid perfunctory determinations by considering all of the claimant's functional limitations, describing how the evidence supports her conclusions, and discussing the claimant's ability to maintain sustained work activity, but she need not provide a narrative discussion for each function."); but see Martin v. Astrue,

---

[6] The Third Circuit and Seventh Circuit have reached similar conclusions, albeit in unpublished decisions. See Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (3d Cir.2000)) ("Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged."); Zatz v. Astrue, 346 F. App'x 107, 111 (7th Cir.2009) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.").

No. 05-CV-72, 2008 WL 4186339, at *16 (N.D.N.Y. Sept. 9, 2008) (declining to remand, despite finding that the ALJ grouped the functions in his function-by-function analysis because "treating the activities separately would not have changed the result of the RFC determination").

This Court finds that, in limited circumstances, the ALJ's failure to provide a function-by-function analysis might constitute harmless error, provided that the absence of the analysis did not frustrate meaningful review of the ALJ's overall RFC assessment.[7]  As set forth below, the ALJ's rationale can be gleaned from her decision and the RFC determination is, ultimately, supported by substantial evidence.  With that said, this Court's decision should not be read as diminishing the importance of the ALJ's obligation to provide a function-by-function assessment.  However, in this particular case, that error is found to be harmless.[8]

### ii.    Compliance with the Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362

---

[7]Several courts have recognized the general applicability of the harmless error rule to the review of disability denial claims.  See, e.g., Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995).

[8]Hopefully, the Second Circuit will provide definitive guidance on this important subject in the near future.  In any event, as noted above, this Court's application of the harmless error rule to a case, such as this, with strong evidence supporting the ALJ's ultimate determination should not be construed as suggesting that the function-by-function assessment is, in any sense, a mere "technicality."  If the evidence were more closely balanced and the lack of a function-by-function assessment frustrated meaningful judicial review, this Court would have no hesitation in joining its sister courts in remanding for further proceedings.

F.3d 28, 31-32 (2d Cir. 2004); <u>Shaw v. Chater</u>, 221 F.3d 126, 134 (2d Cir.2000).[9]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); <u>see</u> <u>also</u> <u>de Roman</u>, 2003 WL 21511160, at *9; <u>Shaw</u>, 221 F.3d at 134; <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir.1998); <u>Schaal v. Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998).

In the present case, in August of 2009, Dr. Howard Amman, Plaintiff's treating physician, completed a physical medical source statement, in which he opined that Plaintiff suffered from depression and back pain. (T at 549). He reported that Plaintiff could only handle a low stress job, could sit for no more than 2 hours at a time (and about 4 hours in an 8-hour workday), stand for 15 minutes, and stand/walk for about 4 hours in an 8-hour work day. (T at 550). According to Dr. Amman, Plaintiff would need to shift positions at will, elevate her legs, and take unscheduled breaks during an 8-hour workday. (T at 551). She could rarely lift even less than 10 pounds, and could never stoop, climb ladders, or climb stairs. (T at 552).

---

[9]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." <u>de Roman v. Barnhart</u>, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

The ALJ discounted Dr. Amman's assessment (albeit without stating precisely how much weight she was affording the opinion). (T at 27). For the following reasons, this Court finds the ALJ's decision not to afford controlling weight to Dr. Amman's opinion was supported by substantial evidence. First, although Dr. Amman stated that he had treated Plaintiff for "years" (T at 549), the treating relationship actually began in December 2008 (T at 592), approximately nine months before the August the ALJ's 2009 opinion. A treating physician's opinion is entitled to greater weight when he or she has an extensive treating relationship with the claimant. 20 C.F.R. § 404.1527 (d)(2) & (5).

Second, the treatment notes and clinical findings do not support Dr. Amman's assessment. For example, an August 2008 treatment note from an emergency room visit indicated a chief complaint of severe headache, but reported that Plaintiff otherwise denied back and joint pain. (T at 553, 564). On the initial visit with Plaintiff in December of 2008, Dr. Amman noted that Plaintiff's chief complaint was depression.[10] (T at 592). No physical limitations were noted. (T at 592). In July 2009, Plaintiff complained of left wrist pain, but Dr. Amman's examination was "unremarkable" with essentially normal range of motion and no sign of injury. (T at 585). A July 2009 examination of the thoracic and lumbrosacral spines by Dr. Lexsee Nickson indicated "mild scoliosis with a convexity to the right" at the thoracic spine and scoliosis with a convexity to the left at the lumbrosacral spines. (T at 584). No other bony or soft tissue abnormality was noted. (T at 584). In November 2009, Dr. Amman reported that Plaintiff was working at "Jobs Plus," with back pain aggravated

---

[10]Dr. Amman's initial treatment note does not reference the August 2008 emergency room visit. Plaintiff did not complaint of headaches during her initial visit with Dr. Amman. The only physical issues referenced were dental problems and "urinary incontinence with running or increased physical activity." (T at 592).

by bending and moving "quite a bit." (T at 582). He recommended treatment with ibuprofen and stretching. (T at 582). In a December 2009 treatment note, Dr. Amman described Plaintiff as "doing well" and treating her "back ache" and headache with ibuprofen. (T at 581).

Third, the ALJ's decision to discount Dr. Amman's assessment is supported by the consultative examiner's analysis. To wit, Dr. Kalyani Ganesh performed a consultative examination in January of 2009 and assessed no gross limitations as to sitting, standing, walking, or using the upper extremities. (T at 506). It is well settled that an ALJ is entitled to rely upon the opinions of State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Accordingly, this Court finds that the ALJ's consideration of Dr. Amman's opinion was consistent with applicable law and supported by substantial evidence.

### iii.    Social Worker's Opinion

In August of 2009, Suzanne DeLong, LCSW, a treating social worker, completed a Mental Medical Source Statement form, in which she opined that Plaintiff was "unable to meet competitive standards" with regard to carrying out very short and simple instructions, working in coordination with or proximity to others without being unduly distracted, making simple work-related decisions, asking simple questions or requesting assistance, getting

along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, and dealing with normal work stress. (T at 546). Ms. DeLong also reported that Plaintiff had no useful ability to function in terms of interacting appropriately with the general public and/or traveling in unfamiliar places. (T at 547). She expected Plaintiff's condition to cause more than four absences per month. (T at 548).

The ALJ afforded no weight to Ms. DeLong's opinion. (T at 29). For the following reasons, this Court finds no reversible error in this decision. First, a social worker's opinion is not considered a "medical opinion" under the Regulations. See Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir.1995); Corson v. Astrue, 601 F. Supp.2d 515, 531-32 (W.D.N.Y. 2009).

To wit, the Social Security Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." Diaz, 59 F.3d at 313 (citing 20 C.F.R. § 404.1527(a)(2)). Section 404.1513(a) lists five categories of "acceptable medical sources," none of which mentions therapists or social workers. Rather, therapists and social welfare agency personnel are expressly listed in a separate section, under "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." Id. (citing 20 C.F.R. § 404.1513(e) (1994)).

Accordingly, because the Regulations do not classify therapists or social workers as either physicians or "other acceptable medical sources," the ALJ was not bound to give Ms. DeLong's opinion any special weight. See Velasquez v. Barnhart, No. 03 Civ. 6448, 2004 WL 1752825, at *3 n. 49 (S.D.N.Y. Aug. 4, 2004)("The Regulations allow a lower level of consideration to be given to these 'other sources,' but 'under no circumstances can the

regulations be read to require the ALJ to give controlling weight' to such sources."). Indeed, the Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995).

Second, Ms. DeLong's assessment was based on only three sessions with Plaintiff, each an hour in length, over the span of a few days in late July and early August 2009. (T at 544). Indeed, Ms. DeLong recognized that the treating relationship had "just begun" and that she would need to determine whether Plaintiff's impairments would last more than twelve months. (T at 544, 548). Courts inclined to grant any weight to opinions provided by social workers have generally done so where there was a high degree of familiarity between the social worker and the claimant. See, e.g. Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant").

Third, Ms. DeLong's opinion appears to be a report of Plaintiff's subjective complaints and does not make reference to any psychiatric signs or clinical findings. See 20 C.F.R. § 404.1528 (a)("Your statements alone are not enough to establish that there is a physical or mental impairment.") & § 404.1528 (b)("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.").

Fourth, additional support for the ALJ's decision to discount Ms. DeLong's

18

assessment is found in the opinions provided by the consultative examiner and State Agency review consultant. Dr. Kristen Barry, Ph.D. performed a consultative psychiatric examination in January 2009. Dr. Barry concluded that Plaintiff could follow and understand simple directions and instructions, maintain her attention and concentration, with some difficulty handling stressors at times. (T at 510-11). Dr. Barry described Plaintiff as a "fairly intelligent individual." (T at 510). The non-examining State Agency review consultant opined that Plaintiff had mild restriction in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 523). The consultant concluded that Plaintiff retained the capacity to perform simple and unskilled work. (T at 529).

For the foregoing reasons, this Court finds that the ALJ acted within her discretion in weighing the social worker's opinion and the ALJ's decision was supported by substantial evidence.

### c.  Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR

96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1.    [Plaintiff's] daily activities;
> 2.    The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
> 3.    Precipitating and aggravating factors;
> 4.    The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
> 5.    Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
> 6.    Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

       7.    Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." <u>Young v. Astrue</u>, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting <u>Brandon v. Bowen</u>, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff testified as follows: She worked as a certified nurse's aide, but was forced to stop working due to a "frozen shoulder." (T at 71). She cannot lift more than 8 pounds or sit/stand for extended periods. (T at 74). She suffers from depression, anxiety attacks, crying spells, and difficulty sleeping. (T at 74, 91). Plaintiff treats with Ms. DeLong for her psychiatric issues, but does not see a psychiatrist. (T at 75). She does not use an assistive device. (T at 79). Plaintiff experiences radiating pain if she sits or stands for extended periods and has difficulty walking at a consistent pace. (T at 79, 91). The pain is constant when Plaintiff is inactive. (T at 79). She has problems squatting and bending and has been experiencing increasing difficulties with regard to memory and concentration. (T at 81-82). She becomes anxious when around others. (T at 81-82, 92). She sometimes has debilitating headaches. (T at 94-95).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limited effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. (T at 26).

The ALJ's credibility assessment was supported by substantial evidence. As

outlined above, the medical record provided a sufficient basis for the ALJ to discount the credibility of Plaintiff's testimony. Plaintiff told the consultative examiner that physical therapy had improved her "frozen shoulder" condition. (T at 504). An August 2008 treatment noted indicated a chief complaint of severe headache, but reported that Plaintiff otherwise denied back and joint pain. (T at 553, 564). In November 2009, Dr. Amman noted that Plaintiff was working at "Jobs Plus," with back pain aggravated by bending and moving "quite a bit." (T at 582). He recommended very conservative treatment- i.e. ibuprofen and stretching. (T at 582). In a December 2009 treatment note, Dr. Amman described Plaintiff as "doing well" and treating her "back ache" and headache with ibuprofen. (T at 581). Dr. Ganesh assessed no gross limitations as to sitting, standing, walking, or using the upper extremities. (T at 506). Dr. Barry concluded that Plaintiff could follow and understand simple directions and instructions, maintain her attention and concentration, with some difficulty handling stressors at times. (T at 510-11). Plaintiff testified that she experienced no side effects from her medications. (T at 77).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing

22

Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised her discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision is therefore upheld.

### d.    Hypotheticals

Melissa Fass Carlin, a vocational expert, testified at the hearing before the ALJ. (T at 95-105). Plaintiff argues that the hypothetical questions presented to the vocational expert were flawed and, thus, the ALJ's reliance on the vocational expert's responses to those hypothetical questions was misplaced.

Whether a hypothetical given to a vocational expert is appropriate depends on whether the hypothetical fully encompasses the claimant's limitations. Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

"[T]he ALJ must present a hypothetical that incorporates all of a claimant's impairments." Salmini v. Astrue, No. 3:06–CV–458, 2009 WL 1794741, *11 (N.D.N.Y. June 23, 2009) (citation omitted). If the ALJ poses "hypothetical questions [that] do 'not include all of a claimant's impairments, limitations and restrictions, or [are] otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a

conclusion of no disability.'" Id. (quotation omitted).

The ALJ presented hypothetical questions to Ms. Carlin based upon her RFC assessment. In each instance, the vocational expert assessed that a person with limitations as determined by the ALJ could not perform Plaintiff's past relevant work, but could perform other jobs in the national economy. (T at 29-30, 96-105). In particular, the vocational expert opined that a person with these limitations could perform work as a small products assembler, marker, and machine tender. (T at 30).

For example, the ALJ asked the vocational expert about a hypothetical claimant with Plaintiff's age, education, and work experience, who could perform light work, with simple, routine, repetitive tasks, with occasional changes to the work setting, occasional decision making, occasional use of judgment, and occasional contact with co-workers, the public, and supervisors, and with an allowance of changing from sitting to standing at will. (T at 100). The vocational expert opined that a person with those limitations could perform work as a small products assembler. (T at 101). Plaintiff challenges this finding by pointing to Ms. Delong's assessment that Plaintiff could not carry out very short and simple instructions, respond appropriately to changes in a routine work settings, and work in coordination with or proximity to others without being duly distracted. (T at 546). Plaintiff's argument is, essentially, another challenge to the ALJ's RFC determination. For the reasons outlined above, this Court finds that the ALJ's RFC determination was supported by substantial evidence. Thus, the ALJ's reliance on the vocational expert's responses to hypothetical questions based on that determination was proper.

### III. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the consultative examiners, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. This Court finds no reversible error and substantial evidence supports the Commissioner's decision.

### IV. ORDERS

Accordingly, it hereby is

ORDERED, that the Commissioner's Motion for Judgment on the Pleadings is GRANTED; and it is further

ORDERED, that Plaintiff's Motion for Judgment on the Pleadings is DENIED; and it is further

ORDERED, that the Clerk of the Court shall enter Judgment accordingly and close this case.

SO ORDERED.

_____
Victor E. Bianchini
United States Magistrate Judge

Dated:     December 20, 2012

           Syracuse, New York